IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA**,

    *Plaintiff*,

*v.*

**TED BRENT ALEXANDER**,

    *Defendant*.

Cause No. 3:20-CR-31-CWR-LGI-1

## ORDER

Before the Court are the United States' *Motion in Limine*, Docket No. 87, Trustmark National Bank's *Motion to Quash Subpoena Duces Tecum*, Docket No. 88, and the Defendant's Response in Opposition to each, Docket Nos. 90 and 91. Upon review, the motions will be granted.

This case concerns Ted Brent Alexander's involvement in the Alexander Seawright Timber Fund, an investment vehicle which in turn invested in a Ponzi scheme. On February 25, 2020, a Grand Jury in the Southern District of Mississippi returned an indictment against Mr. Alexander on three counts: conspiracy to commit securities and commodities fraud and wire fraud under 18 U.S.C. § 1349; securities and commodities fraud under 18 U.S.C. § 1348; and wire fraud under 18 U.S.C. § 1343. On August 2, 2022, the Grand Jury returned a superseding indictment, which contained one count of conspiracy to commit wire fraud, 18 U.S.C. §§ 1342 and 1349, and seven counts of wire fraud, 18 U.S.C. §§ 1342 and 1343. The matter is scheduled for trial on March 21, 2023.

The Government's *Motion in Limine* asks the Court to preclude Mr. Alexander from "mentioning, eliciting from any witness, or attempting to elicit from any witness, information relating to the timing and scope of the government's investigation and prosecution of Lamar Adams, who pled guilty for masterminding the Madison Timber Ponzi scheme." Docket No 87 at 1. From the Government's perspective, Mr. Alexander's proffered arguments about the Government's failure or inability to detect Adams' ponzi scheme are both untrue and irrelevant: "[t]he government's actions in investigating, prosecuting, and ultimately convicting Lamar Adams do not absolve Alexander of fraudulently misrepresenting to investors that he and Seawright were taking steps to safeguard against the victims losing their investment." *Id.* at 2.

For its part, Trustmark seeks to quash Mr. Alexander's subpoena seeking "documents pertaining to Trustmark's communications with government regulators and/or investigators regarding Lamar Adams and/or Madison Timber." Docket No. 88 at 1. Trustmark agrees with the Government that such documents are irrelevant but makes two additional arguments in support of its motion to quash. Docket No. 88 at 4. First, Trustmark argues that the Bank Secrecy Act prohibits it from producing certain documents (like the Suspicious Activity Reports (SARs) at issue here) related to its communications with federal regulators. *Id.* at 4-5. Trustmark also argues that producing the documents would be "unreasonable and oppressive" because of the "broad and vague" nature of the subpoena. *Id.* at 9-10.

In response, Mr. Alexander argues that the bank documents are relevant because they go directly to the specific intent requirement of wire fraud charge. *See* Docket No. 90. According to Mr. Alexander, the records are likely to demonstrate that "at least one - and possibly more than four - of the Government investigations arising from the SARs concluded

that Lamar Adams was engaged in legitimate business activity." *Id*. at 3. This, Mr. Alexander argues, "lend[s] credence to the idea that [he] was also duped by Adams and did not possess the intent to defraud his friends or devise a scheme to defraud them" *Id*. at 3.

The Court agrees with the Government and Trustmark about the irrelevancy of these documents and arguments. The questions remaining in this case concern *Mr. Alexander's* involvement in the fraudulent scheme, particularly the statements Mr. Alexander made to investors about "inspecting each tract of land" and the distribution of payment of fees or commissions he received. Docket No. 65 at 2-3. That Lamar Adams' fraudulent actions may or may not have eluded the government for some undetermined amount of time before he pled guilty has no bearing on whether Mr. Alexander possessed the requisite specific intent when he made untrue and misleading statements to the Fund's investors.

Trustmark's motion to quash is equally well-taken. Federal Rule of Civil Procedure 45 allows a court issuing a subpoena to quash or modify that subpoena if the subpoena would require disclosure of privileged materials, or otherwise impose an undue burden on the subpoenaed person. Fed. R. Civ. P. 45(d)(3). The moving party bears the burden of demonstrating that the materials are privileged or that compliance with the subpoena would be unduly burdensome. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

Here, the Court has already determined that the documents are irrelevant insofar as the Defendant seeks to use them to comment on the Government's investigations or charging decisions. But more than that, these records are privileged under the Bank Secrecy Act. The Code of Federal Regulations makes clear that "[a] SAR, and any information that would reveal the existence of a SAR, are confidential, and shall not be disclosed," except in a limited

number of circumstances not applicable here. The Fifth Circuit has recognized the Bank Secrecy Act's "absolute prohibition on financial institutions from disclosing to third parties information about the filing of a SAR." *BizCapital Business & Indus. Development Corp. v. Comptroller of Currency of U.S.*, 467 F.3d 871, 872 n.3 (5th Cir. 2006). The subpoena at issue would not only require Trustmark to reveal whether an SAR was filed, but also to reveal its contents. That request seems to plainly violate the Act.

For these reasons, the Government's *Motion in Limine*, Docket No. 87, and Trustmark's *Motion to Quash*, Docket No. 88, are **GRANTED**.

**SO ORDERED**, this the 9th day of February, 2023.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE